IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NORRIS LEE WHITAKER,                   )
                                       )
            Petitioner,                )       No. C 05-5065 CRB (PR)
                                       )
      vs.                              )       ORDER DENYING PETITION
                                       )       FOR A WRIT OF HABEAS
JAMES E. HALL, Warden,                 )       CORPUS
                                       )
            Respondent.                )
_____         )

    Petitioner was convicted by a jury in the Superior Court of the State of California in and for the County of Santa Clara of threats to commit a crime resulting in death or great bodily injury (California Penal Code § 422) and assault with a deadly weapon or by means of force likely to produce great bodily injury (§ 245(a)(1)).  Clerk's Tr. (Resp't Ex. P) at 217-18.  The jury found true two allegations that petitioner personally used a deadly weapon (§ 12022(b)(1)).  *Id.*  The trial court found that petitioner had suffered two prior strike convictions (§ 1170.12), one prior serious felony conviction (§ 667(a)), and three prior prison terms (§ 667.5(b)).  Reporter's Tr. (Resp't Ex. Q) at 392-401.  On May 9, 2001, the trial court imposed a sentence of two concurrent terms of twenty-five years to life pursuant to the three strikes law and a consecutive aggregate determinate term of eight years for the enhancement allegations.  *Id.* at 424.  Petitioner was also ordered to pay a restitution fine.  *Id.* at 425.

    On December 20, 2002, the California Court of Appeal struck the enhancement allegation for use of a deadly weapon associated with the assault and remanded the matter

1   for resentencing. *People v. Whitaker*, No. H023028, slip op. at 12-13 (Cal. Ct. App. Dec.

2   20, 2002) (Resp't Ex. A). It affirmed the trial court judgment in all other respects. *Id.*

3   The California Supreme Court denied review on March 19, 2003. Resp't Ex. F.

4         Petitioner also unsuccessfully sought collateral relief from the state courts. On

5   November 2, 2005, the Supreme Court of California denied his final petition for state

6   habeas relief. Resp't Ex. M.

7         On December 8, 2005, petitioner filed the instant federal habeas petition under 28

8   U.S.C. § 2254. Per order filed on March 23, 2006, the court found that the petition,

9   liberally construed, stated cognizable claims under § 2254 and ordered respondent to

10   show cause why a writ of habeas corpus should not be granted.

11         On December 20, 2006, respondent moved to dismiss the petition as untimely.

12   The court denied the motion on June 19, 2007 and reinstated its order to show cause. On

13   October 31, 2007, respondent filed an answer to the order to show cause. Petitioner did

14   not file a traverse.

15                         **FACTUAL BACKGROUND**

16         The California Court of Appeal summarized the facts of the case as follows:

17         Defendant lived with his wife Kathy and her three daughters: Monica
(age 21), Porsche (age 14), and Tatiana (age 12). They resided in an
18   apartment in Sunnyvale. For a few days prior to the incident leading to the
charges against defendant, defendant had been sleeping in a car behind the
19   apartment.

20         On the night of August 22, 2000, Kathy accused Monica of having
an affair with defendant. Defendant listened to the conversation and did not
21   deny the allegation. When defendant got up and walked to the car, Kathy
followed him. She told him to get out of the car. Defendant accused Kathy
22   of having an affair with a neighbor. He said he was going to "beat [her]
ass," then struck her several times with his fist. Kathy called for someone to
23   call the police. The police arrived but found nothing going on, as defendant
and Kathy had gone on a walk to the store.

24

25         When defendant and Kathy arrived back at the apartment, their
argument continued. Defendant asked Kathy to sleep with him in the car.
26   When she refused, defendant struck her on the head with his fist. Kathy told
defendant to stop. Porsche also told defendant to stop, but he said, "Shut up
before I hit you." Tatiana hid in the bathroom with the telephone. Defendant

27

28                                 2

told her not to call the police.

Kathy finally agreed to leave with defendant, so that he would not hurt her daughters. Defendant took a screwdriver and held it to Kathy's throat as he pulled her towards the door. (Count 2, assault with a deadly weapon or by means of force likely to produce great bodily injury.) He threatened to kill Kathy if she did not go outside with him. (Count 1, criminal threats.)

One of Kathy's daughters called the police and reported that defendant was beating Kathy, forcing her out to the car, and threatening her with a screwdriver. Meanwhile, defendant and Kathy got into the car. The police found them there and arrested defendant. Kathy, Porsche, and Tatiana were all interviewed that night, telling the police the facts recounted above.

Defendant was charged, by amended information, with criminal threats (count 1, § 422), assault with a deadly weapon or by means of force likely to produce great bodily injury (count 2, § 245, subd. (a)(1)), and false imprisonment (count 3, §§ 236, 237). The information alleged that defendant personally used a deadly weapon in the commission of the criminal threats and assault counts (§ 12022, subd. (b)(1)). The information also alleged that defendant had three prior convictions that qualified as "strikes" (§ 1170.12), two prior serious felony convictions (§ 667, subd. (a)), and had served three prior prison terms (§ 667.5, subd. (b)). Defendant waived jury trial as to the prior conviction allegations and those allegations were bifurcated from the substantive charges.

At the jury trial, Kathy, Porsche, and Tatiana recanted their prior statements. They testified that the assault and threats never happened. Nevertheless, the jury found defendant guilty of criminal threats (§ 422) and assault with a deadly weapon or by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)), and it found true the allegations of deadly weapon use (§ 12022, subd. (b)(1)) in conjunction with those counts. The jury was unable to reach a verdict as to the false imprisonment charge (§§ 236, 237), and the trial court declared a mistrial as to that count.

At the court trial on the prior conviction allegations, the prosecution stipulated to a dismissal of one "strike" allegation (§ 1170.12) and one prior serious felony allegation (§ 667, subd. (a)). The trial court found true the remaining two "strike" allegations and one prior serious felony allegation. The trial court also found true the three prior prison term allegations (§ 667.5, subd. (b)).

Before sentencing, defendant retained new counsel and moved for a new trial. Counsel declared that she had discovered new evidence: that Kathy "suffers from a mental impairment for which she is prescribed anti-psychotic medication" and that without medication, Kathy "becomes anxious, paranoid and hallucinates." At the hearing on defendant's new trial motion, Kathy testified that she had been diagnosed with schizophrenia and depression. She heard voices that threatened her. She had been prescribed four medications, which helped her to feel better. She had stopped taking

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the medication at the beginning of August of 2000. She did not remember whether she had been hearing voices on the night of the incident. The trial court found that Kathy's testimony was not credible and denied the motion for a new trial.

Resp't Ex. A at 2-4 (footnote omitted).

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court

4

1  concludes in its independent judgment that the relevant state-court decision applied

2  clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the

3  application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

4       Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

5  determination will not be overturned on factual grounds unless objectively unreasonable

6  in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at

7  340.

8       When there is no reasoned opinion from the highest state court to consider the

9  petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*,

10  501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir.

11  2000).

**DISCUSSION**

13       As grounds for habeas relief, petitioner asserts that: (1) the trial court violated his

14  due process rights by instructing the jury with a modified version of CALJIC No. 2.50.02

15  (2000); (2) he received ineffective assistance of counsel at trial and at sentencing; and (3)

16  he was deprived of his right to appeal effectively because the appellate record is

17  incomplete.

18  **I.    Instructional Error**

19       Petitioner claims that the trial court violated his due process rights by instructing

20  the jury with a modified version of CALJIC No. 2.50.02 (2000).  Pet. at 6, 6-B; Pet.

21  Mem. of P. & A. at 3-9.  The court gave this instruction as follows:

22       Evidence has been introduced for the purpose of showing that the
         defendant engaged in an offense involving domestic violence other than that
23       charged in the case. . . .

24       . . . .

25       If you find that the defendant committed a prior offense involving
         domestic violence, you may but are not required to infer that the defendant
26       had a disposition to commit another offense involving domestic violence.

27

28                                          5

1         If you find that the defendant had this disposition, you may but are
     not required to infer that he was likely to commit and did commit the crimes
2    of which he is accused.

3         However, if you find *beyond a reasonable doubt* that the defendant
     committed the prior crime or crimes involving domestic violence, that is not
4    sufficient by itself to prove beyond a reasonable doubt that he committed
     the charged offenses. The weight and significance, if any, are for you to
5    decide. You must not consider this evidence for any other purpose.

6    Resp't Ex. Q at 370-71 (emphasis added). Petitioner argues that this instruction

7    improperly informed the jury that it could find defendant guilty of the crimes charged

8    based on propensity to commit such crimes alone rather than proof beyond a reasonable

9    doubt. Pet. Mem. of P. & A. at 4-5. He also argues that the trial court created confusion

10   by changing the standard of proof for the prior offenses by substituting the words

11   "beyond a reasonable doubt," italicized above, for the words "by a preponderance of

12   evidence" in CALJIC No. 2.50.02 (2000). *Id.* at 5-7.

13        The Due Process Clause of the Fourteenth Amendment protects the accused

14   against conviction except upon proof beyond a reasonable doubt of every fact necessary

15   to constitute the crime with which he or she is charged. *In re Winship*, 397 U.S. 358, 364

16   (1970). "Any jury instruction that 'reduce[s] the level of proof necessary for the

17   Government to carry its burden . . . is plainly inconsistent with the constitutionally rooted

18   presumption of innocence.'" *Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir. 2004) (quoting

19   *Cool v. United States*, 409 U.S. 100, 104 (1972)). When a jury instruction misdescribes

20   the burden of proof, it is considered structural error and thus is not subject to harmless

21   error review. *See id.* If a jury instruction is deemed "ambiguous," however, "it will

22   violate due process only when a reasonable likelihood exists that the jury has applied the

23   challenged instruction in a manner that violates the Constitution." *Id.* (citing *Estelle v.*

24   *McGuire*, 502 U.S. 62, 72 (1991)). All challenged instructions must be considered in

25   light of all of the jury instructions and the trial record as a whole. *Id.* at 821 (citing *Cupp*

26   *v. Naughten*, 414 U.S. 141, 146-47 (1973)).

27

28                                       6

The California Court of Appeal found that petitioner's instructional error claim had no merit. Resp't Ex. A at 6. It noted that the challenged instruction itself expressly provided that proof that the defendant committed prior acts of domestic violence was not sufficient by itself to prove that he committed the charged offenses. *Id.* at 6-7. In addition, the court noted that other instructions adequately informed the jury of the proper reasonable doubt standard:

> [T]he jury was instructed in CALJIC No. 1.01 to consider all the instructions as a whole, in CALJIC No. 2.90 on the requirement of proof beyond a reasonable doubt as to each offense, in CALJIC Nos. 3.30 and 3.31 that the charged offenses require concurrence of act and intent, in CALJIC Nos. 9.94 and 9.02 on the elements of the charged offenses and that each element must be proved, and in CALJIC No. 2.27 that the jury must consider all evidence upon which proof of a fact depends.

*Id.* at 7. The court concluded that "defendant's claim that the jury was misled as to its duty to employ only the reasonable doubt standard when convicting him is not well taken." *Id.* at 8. This decision that was not objectively unreasonable. *See* 28 U.S.C. § 2254(d).

In *Gibson*, the Ninth Circuit noted with approval a jury instruction very similar to the instruction given here. At issue in Gibson was the 1996 version of CALJIC No. 2.50.01, which was substantively identical to the 1996 version of CALJIC No. 2.50.02 except that it addressed prior sexual offenses rather than prior acts of domestic violence. *Gibson*, 387 F.3d at 817 n.4. The 1996 version of CALJIC No. 2.50.01 provided:

> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.

*See id.* at 817. The trial court in *Gibson* gave this instruction in tandem with CALJIC No. 2.50.1, which read: "Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses and/or domestic violence other than those for which he is on trial." *See*

*id.* at 818.  The Ninth Circuit found that the interplay of these two instructions

unconstitutionally carved out an exception to the reasonable doubt burden of proof by

allowing the jury to infer that Gibson committed the charged crimes based only on a

preponderance of evidence of past crimes.  *Id.* at 822.  Importantly, however, the court

noted that the 1999 revision of CALJIC No. 2.50.01 passed constitutional muster because

it included the following addition:

> However, if you find by a preponderance of the evidence that the
> defendant committed [a] prior sexual offense[s], that is not sufficient by
> itself to prove beyond a reasonable doubt that [he] [she] committed the
> charged crime[s]. If you determine an inference properly can be drawn from
> this evidence, this inference is simply one item for you to consider, along
> with all other evidence, in determining whether the defendant has been
> proved guilty beyond a reasonable doubt of the charged crime.

*Id.* at 818-19.  This addition, the court noted, cured the deficiency in the 1996 version of

CALJIC No. 2.50.01 because it clarified that proof of prior offenses was insufficient "by

itself" to prove the charged offenses.  *Id.* (quoting *People v. Falsetta*, 986 P.2d 182, 192

(Cal. 1999)).

The modified version of CALJIC No. 2.50.02 (2000) given in this case included

language very similar to the addition approved in *Gibson*:

> However, if you find beyond a reasonable doubt that the defendant
> committed the prior crime or crimes involving domestic violence, that is not
> sufficient by itself to prove beyond a reasonable doubt that he committed
> the charged offenses.  The weight and significance, if any, are for you to
> decide.  You must not consider this evidence for any other purpose.

Resp't Ex. Q at 371.  Like the addition approved in *Gibson*, this language clarified that

proof that the defendant committed the prior crimes was not sufficient "by itself" to prove

that defendant committed the current crimes.  Unlike the *Gibson* addition, however, it

heightened the standard for finding that the defendant committed the prior crimes from

"by a preponderance of the evidence" to "beyond a reasonable doubt."  Thus the

instruction went even further than the *Gibson*-approved instruction in emphasizing the

reasonable doubt requirement: it informed the jury that not even proof *beyond a*

8

1   *reasonable doubt* of past crimes was sufficient to prove the current crimes *beyond a*

2   *reasonable doubt.*  Given this double emphasis, no rational juror would have understood

3   the instruction to relieve the jury of its duty to find that petitioner committed the charged

4   offenses beyond a reasonable doubt.

5       In any event, other instructions adequately informed the jury of the reasonable

6   doubt requirement.  As the California Court of Appeal noted, the jury was instructed to

7   consider all of the instructions as a whole, Resp't Ex. Q at 355; on the elements of the

8   charged offenses, *id.* at 362-70; on the requirement of proof beyond a reasonable doubt of

9   each element, *id.* at 361-62; on the presumption of innocence in criminal actions, *id.* at

10  361; and on the requirement of concurrence of act and intent, *id.* at 363, 365.  From these

11  other instructions, the jury knew that it could not convict petitioner unless the prosecutor

12  proved each element of the current crimes beyond a reasonable doubt.

13      Furthermore, defense counsel's statements to the jury helped cure any confusion

14  that the modified CALJIC No. 2.50.02 may have created.  At the end of her closing

15  statement, defense counsel told the jury:

16          Now, you can use [testimony about two slaps that occurred earlier in
        the night] if you want, you don't have to, to figure out whether or not
17      [petitioner] was predisposed to commit the crime, if a crime was committed.
        But you can't base a verdict in this case on the existence of the two slaps
18      that occurred [earlier in the night].  You have to look at that evidence in
        conjunction with the other evidence that was presented in the case, if you
19      want to use it at all.

20          But . . . you can't use that particular evidence unless it's shown
        beyond a reasonable doubt that it happened.  And you don't have to use that
21      evidence, the evidence of the two slaps earlier on, if you don't want to.
        Because you have to look at the other evidence that's involved in this case
22      in making a determination as to whether or not my client is guilty or
        innocent . . . .

23
24  *Id.* at 338.  This discussion stressed the essence of CALJIC No. 2.50.02: the jury could,

25  but did not have to, consider proof beyond a reasonable doubt of past incidents of

26  domestic violence as some, but not conclusive, evidence of the charged offenses.

27      Looking at the instructions as a whole and the trial record, *see Cupp*, 414 U.S. at

28                                              9

1   146-47, it is not "reasonabl[y] likel[y]" that the jury applied the modified CALJIC No.

2   2.50.02 (2000) in a manner that violated the Constitution, *see Estelle*, 502 U.S. at 72.  The

3   California Court of Appeal's conclusion to that effect was not objectively unreasonable.

4   *See* 28 U.S.C. § 2254(d).  Petitioner is not entitled to federal habeas relief on this claim.

5   **II.    Ineffective Assistance of Counsel**

6         Petitioner claims that he is entitled to habeas relief for various instances of

7   ineffective assistance of counsel.  He argues that his counsel at trial, Denise Lee, was

8   ineffective for failing to: object to evidence that he was on parole, uncover and present

9   evidence that Mrs. Whitaker suffered from a mental disease, impeach Tatiana with her

10  preliminary hearing testimony, and object to prejudicial hearsay about the contents of the

11  911 tape.  In addition, he argues that his counsel at sentencing, Patricia Fox, was

12  ineffective for failing to present evidence to the judge that portions of the trial transcript

13  had been destroyed.

14        A claim of ineffective assistance of counsel is cognizable as a claim of denial of

15  the Sixth Amendment right to counsel, which guarantees not only assistance, but effective

16  assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  "The

17  benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

18  undermined the proper functioning of the adversarial process that the trial cannot be

19  relied on as having produced a just result."  *Id.*  The right to effective assistance of

20  counsel applies to the performance of both retained and appointed counsel without

21  distinction.  *Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980).

22        In order to prevail on an ineffectiveness of counsel claim, petitioner must establish

23  two things.  First, he must establish that counsel's performance was deficient, i.e., that it

24  fell below an objective standard of reasonableness under prevailing professional norms.

25  *Strickland*, 466 U.S. at 687-88.  The relevant inquiry is not what defense counsel could

26  have done, but rather whether the choices made by defense counsel were reasonable.

27

28

1    *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998). "Judicial scrutiny of counsel's

2    performance must be highly deferential," and "a court must indulge a strong presumption

3    that counsel's conduct falls within the wide range of reasonable professional assistance."

4    *Strickland*, 466 U.S. at 689. Trial counsel cannot have been ineffective for failing to raise

5    a meritless objection or to take a futile action. *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th

6    Cir. 2005); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

7        Second, petitioner must establish that he was prejudiced by counsel's deficient

8    performance, i.e., that "there is a reasonable probability that, but for counsel's

9    unprofessional errors, the result of the proceeding would have been different."

10   *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to

11   undermine confidence in the outcome." *Id.*

12         **A.**     **Failure to Object to Evidence of Parole Status**

13        Petitioner argues that Ms. Lee was ineffective for failing to object to

14   testimony that he was on parole. Pet. at 6, 6-D, 6-F; Pet. Mem. of P. & A. at 10-29. The

15   trial court had previously ordered that no witnesses make any reference to petitioner's

16   criminal history. Resp't Ex. Q at 21-22.

17        The testimony in question occurred during Kathy Whitaker's redirect examination.

18   The prosecutor wanted Mrs. Whitaker to explain why, if her statement to police the night

19   of the incident was indeed inaccurate and petitioner had in fact done nothing wrong, Mrs.

20   Whitaker did not tell the police that her husband had been wrongly arrested. "So the

21   defendant sat in jail for [one to two weeks]," the prosecutor asked, "and you never went to

22   tell anybody what a big mistake had been made?" *Id.* at 113. Mrs. Whitaker responded,

23   "I told his parole officer." *Id.* Petitioner argues that this remark was "highly prejudicial"

24   because it informed the jury of his parole status in a "close case" in which the jury's

25   verdict was "based entirely on the credibility of the witness's [sic] and on its perception of

26   Mr. Whitaker's character." Pet. Mem. of P. & A. at 15-16. Accordingly, petitioner claims

27

28                                    11

1  that Ms. Lee's failure to object to the remark constituted ineffective assistance of counsel.

2  *Id.* at 10.

3      The California Court of Appeal rejected the claim on the ground that there was a

4  "plausible tactical reason" for counsel's failure to object.  Ex. A at 9.  Specifically, the

5  court found that counsel could have reasonably determined that if she objected and

6  requested an admonition, the admonition would have focused the jury's attention on

7  petitioner's parole status, and that the trial court was more likely to give such an

8  admonition than to grant a mistrial.  *Id.*  The court also found that "the brief mention of

9  defendant's parole status was not likely to cause prejudice, in light of the overwhelming

10  evidence of defendant's guilt."  *Id.*  "Because the evidence of defendant's guilt was strong

11  and the prejudicial effect of the brief mention of his parole status was minimal," the court

12  concluded, "there is no reasonable probability the result would have been more favorable

13  to defendant if trial counsel had objected."  *Id.*  The state court's rejection of petitioner's

14  claim was not objectively unreasonable.  *See* 28 U.S.C. § 2254(d).

15      Ms. Lee's declaration on appeal highlights several reasons for her decision not to

16  object to the parole reference.  First, Ms. Lee decided that she might be able to use the

17  reference to her advantage to reiterate that "[Mrs. Whitaker's] statement concerning Mr.

18  Whitaker's non-involvement was not recently fabricated."  Pet. Ex. C at ¶ 9.  According to

19  Mrs. Whitaker, she did tell someone that her husband had been wrongly imprisoned.

20  Second, Ms. Lee reasoned that "seeking a side bar and requesting an admonition would

21  have the same practical effect as objecting in open court, i.e., calling undue attention to

22  the revelation."  *Id.*  The witness would have been admonished in open court and the jury

23  would have been admonished to disregard the witness's statement – "[h]ence, a double

24  admonition."  *Id.*  With respect to her decision not to request a mistrial, counsel explained

25  that she had appeared many times before this particular trial judge and, as a result, was

26  "fairly certain" that a "request for a mistrial would have been denied."  *Id.* at ¶ 10.

27

28

1    Moreover, she was happy with the composition of the jury and with the testimony of Mrs.

2    Whitaker and did not want the risks associated with starting over again with a new trial.

3    *Id.* at ¶ 11. Ms. Lee's declaration makes clear that she made a tactical decision not to

4    object which "[fell] within the wide range of reasonable professional assistance."

5    *Strickland*, 466 U.S. at 689.

6           Even if Ms. Lee's performance was deficient, petitioner has failed to show

7    prejudice. *See id.* at 694. As the court of appeal noted, the reference to petitioner's parole

8    status was brief. Mrs. Whitaker did not specify why petitioner was on parole; she did not

9    even directly say he was on parole, only that she had talked to his parole officer. *See*

10   Resp't Ex. Q at 113. Additionally, given the wide disparity in this case between the

11   police statements from the night of the incident and the trial testimony, in order to convict

12   petitioner of the crimes charged the jury had to have credited the former and largely

13   discredited the latter. The jury must have particularly discredited trial testimony

14   suggesting that the statements taken the night of the incident were inaccurate. Because

15   Mrs. Whitaker's reference to petitioner's parole officer occurred in the context of just such

16   testimony, it is not likely that the reference played much of a role in the jury's verdict.

17   For these reasons, there is no "reasonable probability" that, but for counsel's failure to

18   object, the result of the trial would have been different. *See Strickland*, 466 U.S. at 694.

19          The court of appeal's rejection of petitioner's claim did not result in a decision that

20   was contrary to, or that involved an unreasonable application of, the *Strickland* standard.

21   *See* 28 U.S.C. § 2254(d). Petitioner is not entitled to federal habeas relief on this claim.

22          **B.    Failure to Present Evidence of Mrs. Whitaker's Mental Disease**

23          Petitioner argues that Ms. Lee was ineffective for failing to uncover and

24   present at trial evidence that Mrs. Whitaker suffered from a mental disease for which she

25   had stopped taking her medication. Pet. at 6-H; Pet. Mem. of P. & A. at 30-37.

26          After the verdicts were returned, Ms. Fox replaced Ms. Lee for sentencing

27

28                                                  13

1   purposes.  Resp't Ex. P at 259.  Ms. Fox filed a motion for a new trial based in part on

2   "newly discovered evidence" that Mrs. Whitaker suffered from anxiety, schizophrenia,

3   auditory hallucinations and depression, for which she was prescribed antipsychotic

4   medication that she stopped taking days before the incident at issue.  *Id.* at 257-61.  The

5   trial court held an evidentiary hearing on the matter.  Resp't Ex. Q at 404-17.  After

6   listening to testimony from Mrs. Whitaker, Tatiana, and Porsche, the trial court denied the

7   motion, stating:

8           The court keenly remembers the testimony in this case and also, in
        fact, had reviewed – although the court was not the preliminary hearing
9       judge, I reviewed a transcript of the preliminary hearing at some point in
        this case as well.
10
            But I certainly remember the trial testimony of all the witnesses very
11      well, and I certainly don't think that there's sufficient cause for a new trial to
        be granted here.  And I must say as I've listened intently to the testimony
12      here today, I'm going to make a finding that the credibility of the witnesses
        is quite deficient, and I'll be kind in that respect.
13
                . . . .
14
                . . . .  The court has made a rather strong finding, as you well know,
15      that the witnesses who testified today I believe are not credible, and as to
        what was said here today, as far as testimony is concerned, and I make that
16      specific finding as part of this motion.

17  *Id.* at 416-17.[1]

18      In an order filed September 16, 2002, the Santa Clara County Superior Court

19  denied petitioner's ineffectiveness claim, reasoning that "petitioner has not presented any

20  support, aside from his own assertions, that Kathy Whitaker, a witness in his case, suffers

21  from a medical condition that may have impaired her testimony at his trial."  *In re*

22  *Whitaker*, No. EE015478, slip op. at 2 (Cal. Super. Ct. Sept. 16, 2002) (Resp't Ex. C).

23  This conclusion was not objectively unreasonable.  *See* 28 U.S.C. § 2254(d).

24      It is well established that attacks on the veracity of witnesses generally cannot be

25

26      [1] The court later clarified that it was only Mrs. Whitaker's testimony that he found
27  unconvincing, not the daughters' testimony.

28                                          14

1  challenged through the medium of federal habeas corpus. *Schlette v. California*, 284 F.2d

2  827, 834 (9th Cir. 1960). Here, the state trial court made a strong factual finding that

3  Mrs. Whitaker's testimony regarding the impact of her mental disease on her statement to

4  the police was not credible. Resp't Ex. Q at 416-17. That determination cannot be

5  overturned on federal habeas review without clear and convincing evidence to the

6  contrary. *See* 28 U.S.C. § 2254(e)(1); *Schlette*, 284 F.2d at 834. With no such evidence

7  presented here, it simply cannot be said that Ms. Lee acted unreasonably in failing to raise

8  the issue at trial and that the state courts acted unreasonably in rejecting petitioner's claim.

9  *See* 28 U.S.C. § 2254(d); *Juan H.*, 408 F.3d at 1273.

10  In any event, petitioner has failed to show prejudice. *See Strickland*, 466 U.S. at

11  694. In order to convict petitioner of the crimes charged, the jury had to have credited

12  Mrs. Whitaker's statement to the police from the night of the incident and largely

13  discredited her trial testimony. There is no reason to believe that the jury would have

14  credited her testimony about the impact of her mental disease any more than it credited

15  her other trial testimony, especially given how strongly the trial judge rejected the mental

16  disease testimony at sentencing. The court is satisfied that there is no "reasonable

17  probability" that, but for counsel's failure to present such testimony at trial, "the result of

18  the proceeding would have been different." *Id.* Petitioner is not entitled to federal habeas

19  relief on this claim.

20  **C.    Failure to Impeach Tatiana**

21  Petitioner argues that Ms. Lee was ineffective for failing to impeach Tatiana

22  with her preliminary hearing testimony. Pet. at 6-A, 6-J; Pet. Mem. of P. & A. at 47-52.

23  An important issue at trial was whether Tatiana saw petitioner holding a screwdriver the

24  night of the incident, because the screwdriver was never found. At the preliminary

25  hearing, Tatiana was asked whether she recalled telling Officer Finn that she saw

26  petitioner obtain a screwdriver from the kitchen. Resp't Ex. P at 75. Tatiana responded

27

28                                                     15

that she did not tell Officer Finn anything about a screwdriver specifically, but that she did tell him that she saw petitioner grab "all his tools" from the kitchen and put them into a "lunch pale." *Id.* In response to the same question at trial, Tatiana testified only that she did not recall telling Officer Finn about a screwdriver; she mentioned nothing about a lunch pale filled with tools. Resp't Ex. Q at 158. Petitioner claims that Ms. Lee was ineffective for failing to point out this discrepancy to the jury. Pet. Mem. of P. & A. at 47-52.

The Santa Clara County Superior Court rejected petitioner's claim in an order filed April 16, 2004. It concluded that "there was no reason to rebut [Tatiana's] testimony" because she "recanted her prior statements which incriminated petitioner." *In re Whitaker*, No. EE015478, slip op. at 2 (Cal. Super. Ct. Apr. 16, 2004) (Resp't Ex. I). The superior court's decision was not objectively unreasonable. *See* 28 U.S.C. § 2254(d).

Tatiana's trial testimony was extremely favorable to petitioner because it denied the existence of the screwdriver. Resp't Ex. P at 75. Her preliminary hearing testimony was less favorable because it suggested that there was a screwdriver, albeit in a lunch pale with other tools. Resp't Ex. Q at 158. Trial counsel could have reasonably determined that impeaching Tatiana during trial with her preliminary hearing testimony would have undermined the credibility of her trial testimony. *See Siripongs*, 133 F.3d at 736. And even if that decision was unreasonable, it is not reasonably probable that impeaching Tatiana would have produced a different verdict. *See Strickland*, 466 U.S. at 694. More likely, it would have reaffirmed the jury's finding that Tatiana's recantation at trial lacked credibility. Petitioner is not entitled to federal habeas relief on this claim.

### E.   Failure to Object to References to 911 Call

Petitioner claims that Ms. Lee was ineffective for failing to object to testimony about the contents of the 911 tape because the testimony constituted inadmissible hearsay. Pet. 6, 6-I; Pet. Mem. of P. & A. at 38-46.

During in limine proceedings, the prosecutor Tim McInerny stated that he had no intention of introducing the 911 tape into evidence, and that if he did seek to do so, he would litigate the issue first.  Resp't Ex. Q at 22-23.  He also stated that he thought the contents of the tape were "irrelevant" unless he decided to call the person who made the call, petitioner's step-daughter Monica, to the stand.  *Id.*  Although Mr. McInerny never litigated the issue further or called Monica to the stand, four witnesses referenced details about the call during trial.  Officer Finn testified that he went to the Whitaker residence the night of the incident because of a report of a "serious," "family related" battery.  *Id.* at 190-92.  Officer Payton testified that "the dispatch came out to us as a subject by the name of Norris Whitaker beating the mother of the reporting party."  *Id.* at 232.  He also stated that he was aware of the screwdriver "immediately" because the initial call mentioned a screwdriver.  *Id.* at 235, 270.  Tatiana testified that her sister Monica made the call.  *Id.* at 159.  Porsche also testified that Monica made the call and added that Monica told the police that her "mom was getting hit and that [petitioner] threatened her like [sic] because she told them to come without the sirens."  *Id.* at 136.

The Santa Clara County Superior Court rejected petitioner's ineffectiveness claim because "petitioner fail[ed] to acknowledge that the statements [about the 911 call] were probably offered because [Mrs. Whitaker's] three daughters recanted their prior statements that had incriminated petitioner."  Resp't Ex. I at 2.[2]  Respondent argues that the superior court was likely referring to the exception to the hearsay rule stated in California Evidence Code § 1235, which provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."  This hearsay exception does not apply to the present case because none of the witnesses who

---

[2] The superior court was inaccurate in stating that three daughters recanted. Monica did not appear at trial; only Porsche and Tatiana recanted.

1 referenced the 911 tape had made prior inconsistent statements about the tape.  A

2 different hearsay exception does apply, however.  California Evidence Code § 1240

3 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the

4 statement: (a) Purports to narrate, describe, or explain an act, condition, or event

5 perceived by the declarant; and (b) Was made spontaneously while the declarant was

6 under the stress of excitement caused by such perception."  A 911 call fits this provision.

7       Although the superior court relied on the wrong hearsay exception, its ultimate

8 rejection of petitioner's ineffectiveness claim was not objectively unreasonable.  *See* 28

9 U.S.C. § 2254(d); *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002) (holding that

10 "the intricacies of the state court's analysis need not concern [a federal court sitting in

11 habeas]; what matters is whether the decision the court reached was contrary to

12 controlling federal law").  Ms. Lee could have reasonably determined that if she objected

13 to the references to the 911 call, the trial court would have found that Evidence Code §

14 1240 applied and denied the objection.  Trial counsel cannot have been ineffective for

15 failing to raise a meritless objection.  *See Juan H.*, 408 F.3d at 1273.  In any event,

16 petitioner has not shown prejudice.  Because an exception to the hearsay rule applied,

17 there is no "reasonable probability" that, had counsel objected, the objection would have

18 been upheld and the result of the proceeding would have been different.  *See Strickland*,

19 466 U.S. at 694; *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).  Petitioner is not

20 entitled to federal habeas relief on this claim.[3]

21 ─────────────

22     [3] To whatever extent petitioner also claims that admission of testimony about the
911 call violated his right to confrontation of witnesses, he is not entitled to federal

23 habeas relief.  Confrontation Clause claims are subject to harmless error analysis.
*Hernandez*, 282 F.3d at 1144.  For purposes of federal habeas review, the standard

24 applicable to violations of the Confrontation Clause is whether the inadmissible evidence

25 "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Id.*
(citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  Here, the references to the 911

26 call amounted to no more than cumulative evidence of petitioner's guilt; the police

27 statements taken the night of the incident and the officers' trial testimony describing those

28

**D.     Failure to Present Evidence of Destroyed Transcript**

Petitioner claims that Ms. Fox was ineffective at sentencing for failing to present evidence to the judge that the district attorney's office or the public defender's office conspired with correctional officers to have parts of the trial transcript destroyed. Pet. at 6-A, 6-K; Pet. Mem. of P. & A. at 53-62.  According to petitioner, two parts in particular were destroyed: the part where Tatiana testified that petitioner had a screwdriver, and the part where Mrs. Whitaker testified that she takes Vicodin and that she can drive while taking the medication.  Pet. Mem. of P. & A. at 53-59.

The Santa Clara County Superior Court rejected petitioner's claim in an order filed April 16, 2004.  It concluded that "[p]etitioner has not presented any evidence that the transcript was not a complete record of the testimony given."  Resp't Ex. I at 2.  The superior court's rejection of petitioner's claim was not objectively unreasonable.  *See* 28 U.S.C. § 2254(d).

Petitioner's conclusory assertions that a conspiracy of lawyers and correctional officers deleted portions of his trial transcript have no evidentiary support.  The reporter's transcript of the proceedings is numbered sequentially from page 1 through page 427; there are no gaps in the numbering or any other indication that the transcript is incomplete.  *See* Resp't Ex. Q.  Regarding Tatiana's testimony, the reporter's transcript indicates that Tatiana testified twice on the issue of the screwdriver, once on direct examination and once on cross-examination.  *Id.* at 157-58, 179.  Both times, Tatiana testified favorably for petitioner, stating that she never saw petitioner obtain a screwdriver.  *Id.*  Closing arguments by both counsel corroborate that this was the extent of her testimony at trial.  The prosecutor urged the jury to believe Tatiana's "original, untainted testimony or statements" from the night of the incident and to reject her in-court

---

statements amply supported the verdicts.  Petitioner has not shown that his inability to confront Monica about the 911 call had a "substantial and injurious effect" on the jury. *See id.*

testimony. *Id.* at 300-01, 345-47.  Conversely, defense counsel wanted the jury to rely on Tatiana's in-court testimony; she argued that the fact that the screwdriver was never found "goes to support her, Tatiana, in court testimony as opposed to the statement she made on August 23rd." *Id.* at 332.  Petitioner has failed to demonstrate that the record of Tatiana's testimony is incomplete.

As for Mrs. Whitaker's testimony about Vicodin, the preliminary hearing transcript appears to contain the testimony petitioner claims is missing from the trial transcript. Mrs. Whitaker stated at the preliminary hearing that she consumed Vicodin the night of the incident and that it did not make her drowsy.  Resp't Ex. P at 44-45.  Petitioner has not shown that he was in any way prejudiced by the allegedly missing trial testimony. *See Strickland*, 466 U.S. at 694.

On this record, it cannot be said that Ms. Fox was ineffective for failing to present evidence to the judge that parts of the trial transcript were deleted.  *See Juan H.*, 408 F.3d at 1273; *Rupe*, 93 F.3d at 1445.  Petitioner is not entitled to federal habeas relief on this claim.

**III.    Incomplete Appellate Record**

In his final claim for habeas relief, petitioner requests that the court provide him with transcripts of the 911 tape, the jury voir dire, the opening statements at trial, and the resentencing hearing that took place on May 12, 2003.  Pet. at 6-A, 6-L; Pet. Mem. of P. & A. at 63-66.  He argues that without these transcripts he cannot effectively appeal.  Pet. Mem. of P. & A. at 64.

The reporter's transcript indicates that the voir dire and opening statements were not transcribed as a matter of course.  *See* Resp't Ex. Q at 42, 51.  It is unclear from the record whether the 911 tape or the May 12, 2003 resentencing hearing were transcribed.

"[T]he State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." *Britt v. North Carolina*, 404 U.S. 226, 227 (1971).  A trial court's failure to make a record of

portions of the trial, for instance voir dire and opening statements, may violate due process if the record is such that the defendant cannot effectively appeal. *Madera v. Risley*, 885 F.2d 646, 648 (9th Cir. 1989). Statutes or rules requiring an indigent defendant to show a specific need to obtain a complete transcript do not run counter to clearly established federal law. *Boyd v. Newland*, 455 F.3d 897, 908-09 (9th Cir. 2006) (California rule requiring an indigent defendant to show a specific need for a complete voir dire transcript does not violate clearly established federal law).

The Santa Clara County Superior Court rejected petitioner's claim on the ground that "there is no authority requiring this Court to provide the petitioner a '*free* transcript in post-conviction collateral proceedings without any preliminary allegation which, if true, would show that such proceedings are meritorious.'" Resp't Ex. I at 2 (quoting *People v. Chavez*, 243 Cal. App. 2d 761, 767 (1966)). This holding was not objectively unreasonable. *See* 28 U.S.C. § 2254(d). The state court's requirement that petitioner make a preliminary showing of need does not contravene clearly established federal law. *See Boyd*, 455 F.3d at 908-09. Petitioner's unsupported assertion that "there is a very strong necessity" for the requested transcripts, Pet. Mem. of P. & A. at 66, is insufficient to show why he cannot effectively appeal with the record he has, *see Madera*, 885 F.2d at 648. Petitioner is not entitled to federal habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  August 7, 2008

CHARLES R. BREYER
United States District Judge